UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 06-180-JBC**

**CONNIE JONES,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,** **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Disability Insurance Benefits (DE 12, 13). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I. Overview of the Process**

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court

does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

The plaintiff is a forty-six-year-old female with an eleventh-grade education and has past relevant work ("PRW") as a server and a sales clerk. AR 18, 50. She alleges disability beginning on April 3, 2001, as a result of constant illness and pain. AR 18. The plaintiff filed a claim for Disability Insurance Benefits ("DIB") on

April 18, 2003, which was denied initially and on reconsideration. *Id.* After a hearing held on September 21, 2005, Administrative Law Judge ("ALJ") Roger L. Reynolds determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity. At Step 2, the ALJ found that the plaintiff's multiple myalgias; osteopenia; chronic obstructive pulmonary disease secondary to nicotine abuse; obesity; right knee pain of uncertain etiology; gastroesophageal reflux disease; irritable bowel syndrome; bipolar disorder; and personality disorder – anxiety disorder were severe impairments. The ALJ then determined that the plaintiff's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. At Step 4, the ALJ found that the plaintiff was unable to perform her PRW. The ALJ concluded at Step 5, however, that the plaintiff could perform a significant number of other jobs in the national economy at the light exertional level and that she was therefore not disabled. AR 24-25.

**III. Legal Analysis**

All of the plaintiff's claims of error relate to the ALJ's consideration of the evidence regarding her psychological impairments. Specifically, the plaintiff claims that the ALJ improperly relied on the opinions of two non-treating, non-examining state agency psychologists instead of the findings of Drs. Harwell Smith, III and John Fulton, who each examined the plaintiff. She also asserts that the ALJ distorted Dr. Smith's findings, which then allowed him to conclude that Dr. Fulton's

opinion was at odds with the other evidence in the record.

Dr. Smith examined the plaintiff on July 2, 2003. AR 157-62. He opined that her condition was "so unusual that no diagnosis can be made with confidence" and that she was possibly suffering from a "psychotic schizo-affective disorder and that many or all of the physical complaints are somatic delusions." AR 161. Dr. Smith also found that the plaintiff's ability to tolerate stress was poor; her ability to interact socially, including with co-workers, was fair; her ability to show sustained concentration on tasks was poor; and her ability to complete tasks and understand and remember two-step instructions was good. AR 162. He also stated that her ability to adapt to the pressures of a day-to-day work setting was unknown. *Id.*

Dr. Edward Stodola, a non-examining state psychologist, reviewed the plaintiff's file on September 29, 2003, and found that her mental impairments caused only moderate limitations at worst in her ability to work. AR 177, 181-82. He also stated that he gave limited weight to Dr. Smith's evaluation because Dr. Smith provided "conflicting opinion statements." AR 183. A second non-examining psychologist, Dr. Jan Jacobson, completed a review of the plaintiff's file on February 27, 2004; her findings were virtually identical to Dr. Stodola's. AR 234-49. Both of these doctors ultimately concluded that the plaintiff could understand, remember, and carry out work-related instructions; that she could relate adequately in non-public settings; and that she could tolerate the changes and pressures of a routine setting. AR 183, 249.

Finally, Dr. Fulton examined the plaintiff on January 22, 2005, at the request of the plaintiff's attorney. AR 299-304. Dr. Fulton diagnosed the plaintiff with bipolar I disorder and post-traumatic stress disorder; he assigned her a Global Assessment of Function ("GAF") rating of 35, with the past year at 50. AR 303. He also opined that the plaintiff's psychological impairments will present "significant barriers to employment." AR 304.

The ALJ did not err in his consideration of Dr. Smith's evaluation. Contrary to the plaintiff's claim that the ALJ distorted and did not give appropriate weight to Dr. Smith's opinion, the ALJ clearly discussed Dr. Smith's findings in his opinion. AR 20. While the ALJ did not explicitly mention the functional limitations Dr. Smith suggested, this omission does not warrant the reversal of his opinion. The ALJ stated that the plaintiff

> is limited to entry level work with simple, repetitive procedures, and no frequent changes in work routines. She must have no requirement for problem solving, independent planning or the setting of goals. She should work primarily with objects as opposed to people and is limited to only occasional interaction with the general public, co-workers or supervisors.

AR 21-22. This residual functional capacity ("RFC") evaluation is consistent with Dr. Smith's conclusion that the plaintiff's ability to show sustained concentration and tolerate stress was poor, her ability to deal with others was fair, and her ability to complete simple tasks was good. Reversing the ALJ's decision for failing to explicitly mention what is implicit in his findings would be redundant. *See Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004) (holding that an

5

ALJ need not discuss every piece of evidence in the record for his decision to stand); *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("[A] remand is not essential if it will amount to no more than an empty exercise.").[1]

The ALJ's consideration of the non-examining physicians' opinions was also proper. Though the opinion of a non-examining physician is not entitled to the same deference as that of a treating or consulting physician, an ALJ must consider the opinions of such a physician as evidence. 20 C.F.R. § 404.1527(f). The opinions of non-examining physicians are evaluated based on their supportability and their consistency with the record as a whole, among other factors. *Id.*; 20 C.F.R. § 404.1527(d). In this case, the non-examining physicians' conclusions are almost perfectly consistent with each other. The limitations these physicians suggest are also similar to those suggested by Dr. Smith; to the extent that Dr. Smith and the non-examining physicians disagree, the ALJ's determination of the plaintiff's RFC is actually more in line with the functional limitations put forth by Dr. Smith than the less restrictive ones recommended by the non-examining physicians. The ALJ did not err in utilizing the non-examining physicians' opinions.

The ALJ also did not err in rejecting the opinion of Dr. Fulton. The ALJ properly noted that Dr. Fulton's conclusions were inconsistent with the claimant's lack of psychiatric treatment in the past and the fact that none of her treating

---

[1]The court also notes that Dr. Smith neither opined that the plaintiff was disabled for all work activity, nor did he state facts that would suggest that such a finding would be appropriate. At most, Dr. Smith found only that her ability to deal with the day-to-day pressures of a work setting was unknown. AR 162.

physicians ever noted mental problems of the severity claimed by Dr. Fulton. AR 22, 306-19. Dr. Fulton's findings are also contrary to those of the non-examining physicians, and, although the plaintiff argues that Dr. Smith's opinion was similar to that of Dr. Fulton, the court disagrees. While Dr. Fulton found that the plaintiff would have some difficulty returning to work, Dr. Smith merely noted impairments related to her ability to handle stress and interact socially and stated that her ability to return to work full-time was unknown. Finally, Dr. Fulton's findings are at odds with the fact that the plaintiff worked at a near-gainful level in 2002 and 2003, after the alleged onset date of her disability. In sum, the ALJ did not err in considering the psychological evaluations in the record, and the court concludes that his determination was supported by substantial evidence.[2]

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 12) is **DENIED**.

---

[2]Because the court has found that the ALJ did not err in discounting the importance of Dr. Fulton's examination, the plaintiff's additional claim that the ALJ should not have relied on the non-examining physicians' reports because they pre-dated Dr. Fulton's assessment is also meritless.

Signed on March 13, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

8